UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CURLEY P. GIBBS-EL, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 3:10-CV-323 JD |
| v. ) | |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Curley P. Gibbs-El, Jr., a *pro se* prisoner, filed a habeas corpus petition challenging a prison disciplinary proceeding [DE 4]. In WCC 07-11-0193, a conduct adjustment board at Westville Correctional Center ("Westville") found Gibbs-El guilty of violating disciplinary rule B223, which prohibits inmates from engaging in or encouraging others to engage in a group demonstration [DE 12-9, DE 12-14]. The charges were initiated on November 8, 2007, when Chaplain Steve Green prepared a conduct report stating as follows:

> On the above date and time [11/4/07 at approximately 9:50 a.m.], I, Chaplain Steve Green gave Offender Curley Gibbs 881378 a direct order to stop participating in the Moorish Science Temple of America Sunday School service and return to his housing unit.[1] Offender Gibbs 881378 refused the order, became very boisterous and stated, "We're not leaving!"

[DE 12-1]. On that same date, Sergeant F. Magana prepared the following witness statement:

> At approx 10:00 AM, I, Sgt. F. Magana arrived [at] the E.C. Chapel. I was to escort the I.C. offenders back to the complex. Upon entering the chapel, I observed a group of offenders surrounding Chaplain Greene [sic]. The offenders were shouting "You don't touch us" and "You can't put your hands on us" . . . . Officer Silva was ordering the offenders to settle down. I immediately went to the center of the group

---

[1] Although not detailed in the conduct report, a document Gibbs-El attached to his petition indicates that the chaplain believed the inmates were using the chapel to talk about matters unrelated to their religion [*see* DE 4 at 13].

> and ordered the offenders to back away and leave the chapel. The offenders complied to my orders. I escorted the I.C. offenders back to the complex after the situation was under control . . . . The disturbance was observed by me to be a heated VERBAL confrontation between the Moorish Science Offender Congregation and Chaplain Greene [sic]. I did not witness any physical exchange ie, punches, shoves, between the two parties involved.

[DE 12-2].

Gibbs-El was notified of the charges and given a copy of the conduct report [DE 12-1, DE 12-3]. The screening report reflects that he pled not guilty, requested a lay advocate, and requested witness statements from two inmates, Sam Hubbard and Frank James [DE 12-3]. He also requested that the "14th Amendment" be produced as physical evidence [*Id.*]. Thereafter, witness statements were obtained from Gibbs-El's two witnesses [DE 12-4, DE 12-5]. Inmate Hubbard stated that none of the members of the congregation had refused a direct order from Chaplain Green, and that it was the chaplain who was being aggressive [DE 12-4]. Inmate James stated, "I couldn't hear this Brother Gibbs saying nothing of the sort at anytime, at all, period an[d] that's for sure!" [DE 12-5].

A disciplinary hearing was held on December 7, 2007 [DE 12-9]. Based on the witness statements, the board found Gibbs-El guilty and imposed various sanctions, including the loss of 120 days earned time credits [*Id.*]. The board stated that this sanction was imposed due to the seriousness of the offense, Gibbs-El's attitude and demeanor during the hearing, and the degree to which the incident had disrupted the facility [*Id.*]. Gibbs-El's appeals to the facility head and final reviewing authority were denied [DE 12-10 to DE 12-13]. This petition followed.

When prisoners lose earned time credits in a prison disciplinary hearing, they are entitled to certain protections under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional

2

goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to support the board's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, Gibbs-El raises six claims [DE 4].[2] He first claims that the hearing violated the Indiana Department of Correction ("IDOC") Adult Disciplinary Procedures ("ADP") because it was held in front of two rather than three disciplinary board members as required by the ADP [DE 4 at 2]. This claim appears to have no basis in the record, since three board members signed the disciplinary hearing report [DE 12-9]. Regardless, relief in a federal habeas corpus proceeding is only available for a violation of the United States Constitution or other federal law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Gibbs-El's claim premised on an alleged violation of a prison policy does not provide a basis for granting federal habeas relief. For the same reason, Gibbs-El's second claim, that the sanction imposed by the board was improper under the ADP [*see* DE 4 at 2-3], also fails. Accordingly, claims one and two are denied.

In claim three, Gibbs-El asserts that he was "denied due process when he was about to be awarded the G.E.D. testing that he was secured he would pass before he was taken out of school for said sanction. . . . " [DE 4 at 3]. Although it is not entirely clear, Gibbs-El may be attempting to show that he had a liberty interest at stake in the hearing, since in his view the disciplinary proceeding impacted his educational opportunities. Such a statement is unnecessary, however, because there is no dispute that Gibbs-El was entitled to due process protections at the hearing. *See*

---

[2] Gibbs-El was granted an extension until April 8, 2011, to file a traverse in support of his petition [*see* DE 14]. That deadline passed more than 30 days ago and to date no traverse has been received.

*Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002) (Indiana inmates are entitled to due process protections when a disciplinary body revokes earned time credits or demotes them to a lower credit-earning class). Nevertheless, claim three does not allege the violation of any right secured under *Wolff* or *Hill*, and so it fails to establish a basis for granting federal habeas relief.

In claim four, Gibbs-El asserts that he was denied an impartial decision-maker [DE 4 at 3-4]. Adjudicators in the prison disciplinary setting are entitled to a "presumption of honesty and integrity," and the constitutional standard for impermissible bias is high. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process is violated when officials who are directly or substantially involved in the factual events underlying the disciplinary charges also serve on the disciplinary board. *Id.* at 767; *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Here, Gibbs-El does not assert that any of the board members were involved in the underlying charge. Instead, he claims that one of the board members said to him, "Have you ever heard of being in the wrong place at the wrong time?" during the hearing [DE 4 at 3]. It is not clear how this statement evidences bias, but regardless, Gibbs-El has not established the type of bias that would violate the Due Process Clause. *See Whitford,* 63 F.3d at 534. Accordingly, this claim is denied.

In claim five, Gibbs-El asserts that the board did not give adequate weight to his witness statements [DE 4 at 4]. Gibbs-El had a limited right to call witnesses and present documentary evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566; *Piggie*, 277 F.3d at 925. He requested two witness statements, and those statements were obtained and considered by the board [DE 12-4, DE 12-5]. He thus received the process he was due. Contrary to Gibbs-El's assertions, the Due Process Clause did not require the board to credit his witness

4

statements or prove his guilt beyond a reasonable doubt. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

To the extent Gibbs-El is arguing within this claim that the evidence was insufficient to find him guilty, that argument is unavailing as well. Due process is satisfied if there is "some evidence" in the record to support the board's determination. *Hill*, 472 U.S. at 455. This is not a demanding standard, and "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. A disciplinary determination will be overturned on the basis of insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In this case, there is ample evidence in the record to support the conclusion reached by the disciplinary board. The conduct report alone constitutes some evidence that Gibbs-El disobeyed a direct order by the chaplain to leave the chapel and was encouraging his fellow inmates to do the same. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (conduct report alone provided "some evidence" to support disciplinary determination). Moreover, Sergeant Magana's statement confirmed that Gibbs-El and the other inmates had "surrounded" the chaplain and were engaged in a "heated verbal confrontation" with him; it is also apparent from Sergeant Magana's statement that it took the efforts of two correctional officers to get the crowd to disburse [DE 12-2]. The disciplinary board permissibly chose to credit the statements of Chaplain Green and Sergeant Magana, and to the extent Gibbs-El is requesting that this court make its own determination of the

5

relative credibility of the witnesses, the court is not permitted to do so. *See Hill*, 472 U.S. at 455. Instead the question for this court is whether there is any evidence in the record to support the determination of the disciplinary board. *Id.* Because there is such evidence in the record, this claim is denied.

Finally, in claim six, Gibbs-El asserts that he believes one of the board members "is racially bias[ed]" [DE 4 at 4]. As evidence of this bias he asserts that statistical data shows the board member found "90% of the Asiatics and Hispanics guilty and [gave] them the maximum penalties of their sanctions when charged with a class (A) or (B) offense." [*Id.*] By way of example he points to three cases in which he asserts that the board member imposed disparate sanctions against inmates of different races[3] [*Id.* at 4-5]. Aside from the fact that Gibbs-El has offered no documentary evidence supporting his assertions, this information is of limited relevance. The inmates Gibbs-El points to were found guilty of committing different offenses than he was, and he does not provide any information about their disciplinary histories, making an accurate comparison impossible [*Id.* at 4-5]. Moreover, statistical data alone would not prove an equal protection violation, since such a claim requires proof of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-41 (1976); *see also David K. v. Lane*, 839 F.2d 1265, 1272 (7th Cir. 1988) (even if prison policies had a disproportionate impact on white inmates, equal protection claim by white prisoners failed because they presented no evidence that officials harbored a discriminatory intent).

Gibbs-El is correct that prison officials may not impose disciplinary action for arbitrary reasons, but the protections against such arbitrary action are the due process protections afforded

---

[3] Gibbs-El claims that two of the inmates were found guilty of possessing cell phones, while the third was found guilty of possessing a weapon [DE 4 at 4-5]. He further claims that two of the inmates were white while the third was "Asiatic" [*Id.*]. He appears to believe that the "Asiatic" inmate was treated more harshly than the other two. Gibbs-El does not reveal his own racial background in the petition.

by *Wolff* and *Hill*. *See McPherson*, 188 F.3d at 787 ("[P]risoners are entitled to be free from arbitrary actions of prison officials, but . . . the protection from such arbitrary action is found in the procedures mandated by due process."). As explained above in connection with claims one through five, Gibbs-El has not established a violation of his rights under *Wolff* or *Hill*. To the extent Gibbs-El is arguing that the board member's actions violated state law [*see* DE 4 at 5], federal habeas relief is not available for a violation of state law. *Estelle*, 502 U.S. at 67-68. Accordingly, claim six is denied.

For these reasons, the petition [DE 4] is DENIED.

SO ORDERED.

ENTERED:   May 31, 2011

/s/ JON E. DEGUILIO
Judge
United States District Court